NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 9 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   17-30087 |
| Plaintiff-Appellee, | D.C. No. 4:16-cr-00009-RRB-1 |
| v. | |
| BOBBY DEWAYNE THOMPSON II, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted June 13, 2018
Anchorage, Alaska

Before:  THOMAS, Chief Judge, and CALLAHAN and BEA, Circuit Judges.

Appellant Bobby Dewayne Thompson, II ("Thompson") appeals his federal

jury conviction for one count of illegally possessing a firearm and his 110-month

sentence.  Thompson contends that the initial detention of the car in which he was

traveling and the second pat-down search yielding his identification card

contravened his Fourth Amendment rights against unreasonable searches and

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

seizures. Thompson argues that the district court erred in denying his motion to suppress evidence obtained from a search of his cell phone. Thompson further argues that there was a fatal variance between the facts stated in his indictment and the evidence the Government proffered at trial. Finally, Thompson argues that his sentence was substantively unreasonable because it was greater than necessary to satisfy 18 U.S.C. § 3553(a)'s sentencing objectives. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

1.    **Constitutionality of Thompson's Detention:** We review the district court's denial of the motion to suppress de novo, and we review for clear error a district court's factual findings. *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003). Once the police officer stopped the car for speeding and for missing a front license plate, he was entitled to ask the car occupants for their names and to check their identifications. *See Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cnty.*, 542 U.S. 177, 185 (2004). The 25-minute detention of Thompson was permissible because: (1) the length of the detention was directly attributable to Thompson's repeated lies about who he was; (2) the lies reasonably raised suspicion about Thompson's activities; and (3) the police needed to know Thompson's identity before issuing him a citation. *See District of Columbia v.*

---

[1] As the parties are familiar with the facts and procedural history, we restate them only as necessary to explain our decision.

2

*Wesby*, 138 S.Ct. 577, 587 (2018); *Devenpeck v. Alford*, 543 U.S. 146, 149, 155–56 (2004).  Therefore, the detention did not violate Thompson's rights under the Fourth Amendment.

2.  **Constitutionality of the Second Pat-Down Search and the Admissibility of Derivative Evidence:** As noted, we review the district court's denial of the motion to suppress de novo, and we review for clear error a district court's factual findings.  *Fernandez-Castillo*, 324 F.3d at 1117.  We review a district court's inevitable-discovery ruling for clear error.  *United States v. Lundin*, 817 F.3d 1151, 1157 (9th Cir. 2016).  Thompson's second pat-down search occurred after the police had decided to detain him because he had thrice lied about his identity.  A lawful arrest justifies a full search of the person.  *Birchfield v. North Dakota*, 136 S.Ct. 2160, 2176 (2016).  Here, the search was consistent with the troopers' physical-safety concerns and their need to ascertain Thompson's identity.  *Id*.

In any event, had the police taken Thompson straight to a detention facility without first patting him down, his identity would have been discovered at the facility.  *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 330 (2012) (upholding, in the detention-facility setting, "more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband").  As a result, the derivative evidence would still be admissible under

3

the "inevitable discovery" exception to the exclusionary rule. *Utah v. Strieff*, 136 S.Ct. 2056, 2061 (2016). Consequently, Thompson's second-pat down search did not violate his Fourth Amendment rights.

3. **Constitutionality of the Search Warrants and the Admissibility of the Evidence Obtained from Thompson's Cell Phone:** We review de novo a district court's denial of a motion to suppress evidence, including the application of the "good faith" exception to the exclusionary rule. *United States v. Needham*, 718 F.3d 1190, 1193 (9th Cir. 2013). We review for clear error a state court judge's finding of probable cause to issue a search warrant and give "great deference" to such findings. *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011).

Here, Officer Curtis Vik's ("Vik") first warrant application sought to search Thompson's property at the detention facility. It was based on these facts: (1) Thompson had a prior federal felony conviction for selling cocaine and two Alaska felony convictions for Assault and Dangerous Drugs, respectively; (2) cocaine and a large wad of cash totaling almost $800 were found on Thompson's person; (3) the pistol was discovered under his car seat; (4) Thompson had lied about his identity; (5) Thompson had four outstanding Anchorage Police Department warrants; (6) Thompson was out of custody on conditions of release; and (7) Vik asserted that the firearm was used to protect Thompson's cocaine and illegal dealings and that drug dealers frequently conduct their illicit transactions via cell

phones.  Vik's second warrant application sought to examine the contents of Thompson's phone and explained why Thompson's phone might contain evidence of his crimes.

Even if there were some question as to whether the search warrants comported with the Fourth Amendment, the evidence remained admissible under the "good faith" exception to the exclusionary rule.  *See United States v. Leon*, 468 U.S. 897, 900, 918–25 (1984).  Vik acted in objectively reasonable reliance on the warrants issued by the magistrate.  *Id*. at 922.  Accordingly, the evidence elicited from Thompson's cell phone was admissible.

4.      **Fatal Variance:** "Fatal variance" claims derive from an accused's "Fifth Amendment right to stand trial only on charges made by a grand jury in its indictment."  *United States v. Garcia-Paz*, 282 F.3d 1212, 1215 (9th Cir. 2002), *cert. denied*, 537 U.S. 938 (2002).  We review de novo a claim that there was a fatal variance between the proof at trial and the facts alleged in the indictment.  *United States v. Doss*, 630 F.3d 1181, 1191 (9th Cir. 2011).  However, when a defendant does not object in the trial court that a jury instruction is a variance, we review a variance claim only for plain error.  *United States v. Choy*, 309 F.3d 602, 607 (9th Cir. 2002).

Here, because Thompson did not clearly preserve the issue in the district court, we review his claim for plain error.  *Puckett v. United States*, 556 U.S. 129,

135 (2009). He now contends that he was effectively convicted for possession of the gun on March 20, not March 22, because the cell phone photos of him with the gun were taken on March 20. However, at trial, the prosecution focused on March 22. The Government offered the March 20 photographs as supporting evidence that Thompson possessed the pistol on March 22, and there was overwhelming evidence that Thompson did possess the pistol on March 22 because an officer testified that the pistol was discovered under Thompson's car seat on March 22. In addition, the district judge instructed the jury to reach its verdict based only on the evidence presented. Consequently, Thompson has not demonstrated that he was convicted of possession of the pistol on March 20 rather than on March 22.

5.     **Substantive Unreasonableness of Thompson's Sentence:** Thompson's Sentencing Memorandum raised the substantive-unreasonableness issue in the district court. We review a substantive unreasonableness claim for abuse of discretion. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). We ask whether a sentence was substantively unreasonable, based on "the totality of the circumstances, including the degree of variance for a sentence imposed outside the Guidelines range." *Id.*; *see also Gall v. United States*, 552 U.S. 38, 51 (2007). We "may *not* presume that a non-Guidelines sentence is *un*reasonable." *Carty*, 520 F.3d at 993.

Here, Thompson's 110-month sentence was the minimum suggested by the

United States Sentencing Guidelines. Thompson was no youthful offender; he was 43 years old at the time of sentencing. There was evidence at trial that Thompson had: (1) used the pistol to facilitate drug sales; (2) disregarded court-ordered probation conditions; and (3) lied to the officers. In addition, Thompson's extensive criminal history included eight assaults, three failures to appear, and a federal drug trafficking offense for which he was sentenced to 120 months of incarceration. Also, there was evidence that Thompson was a "self-appointed leader" of the Mountain View Crips gang. Therefore, Thompson has not demonstrated that his sentence was substantively unreasonable.

Thompson's conviction and sentence are **AFFIRMED.**